UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:18-cr-00044-MOC

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| DARYL BROWN, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Defendant's pro se Motions to Appoint Counsel and for Compassionate Release/Reduction of Sentence. (Doc. No. 41). Defendant is currently serving a 64-month sentence at Yazoo City, Mississippi United States Prison ("USP") for unlawful possession of a firearm by a felon, in violation of 18 USC § 922(g)(1) and 924(a)(2). He seeks early release from prison due to several chronic illnesses, most importantly diabetes, and the threat of COVID-19. The Government has responded in opposition to the motion. (Doc. No. 44).

I. BACKGROUND

On February 7, 2018, Defendant was named in a three-count Indictment charging him with (Counts One and Two) Knowingly and Intentionally Distributing and Possessing with the Intent to Distribute Cocaine Base, commonly known as "crack cocaine" in violation of 18 USC § 841(a)(1) and 18 USC § 841(b)(1)(C) and one count of Unlawful Possession of a Firearm by a Convicted Felon, in violation of 18 USC § 922(g)(1). (Doc. No. 24, Presentence Report ("PSR") at ¶ 1). On May 2, 2018, Defendant pleaded guilty to Count Three, felon in possession. (Id. at ¶ 3). On September 27, 2018, Defendant was sentenced to 64-months imprisonment and 3 years of supervised release. (Doc. No. 28, Judgment).

1

In July 2017, a confidential informant working with the ATF informed law enforcement that a person known as "CHILL," later identified as Defendant, was distributing narcotics in the Charlotte area. (PSR at ¶ 18). On July 25, 2017, law enforcement contacted Defendant and arranged for him to meet with an undercover officer ("UCO") to engage in a narcotics transaction. (Id. at ¶ 19). Later that day, Defendant arrived at a pre-arranged location, a warehouse that had been outfitted with surveillance equipment, where he met with the UCO; Defendant sold the UCO a small user amount of crack cocaine. (Id.). On August 1, 2017, Defendant again met with the UCO at the warehouse and sold the UCO .75 grams of crack cocaine and .56 grams of a mixture of methadone, cocaine, morphine, and heroin. (Id. at ¶ 20). On August 2, 2017, Defendant met with the UCOs at the warehouse and sold the UCOs approximately .42 grams of crack cocaine. (Id. at ¶ 21).

On September 12, 2017, Defendant met with the UCOs at the warehouse and during this meeting, Defendant sold the UCOs a loaded firearm and a bulletproof vest. At the time of this transaction, Defendant had been previously convicted of a felony and the firearm was manufactured outside North Carolina. (Id. at ¶ 22). Finally, on September 22, 2017, Defendant spoke with the UCOs and indicated that he had five additional firearms that he wanted to sell to the UCOs. Defendant informed the UCOs that two of the firearms were machine guns and that he had a contact that was providing him with the firearms; this transaction never transpired. (PSR at ¶¶ 13-16 and 22).

According to the Bureau of Prisons ("BOP") records, Defendant's current projected release date with full good time credit is August 30, 2022. As of April 16, 2021, BOP calculated that Defendant had served 3 years, 2 months, and 4 days, or about 59.4% of his full term (and about 69.8% of his statutory term). On April 6, 2021, Defendant filed a *pro se* motion for

compassionate relief under 18 USC § 3582(c)(1)(A), seeking a sentence reduction that would result in his immediate release from the custody of the BOP. (Doc. No. 41). Defendant states that he has diabetes and high blood pressure which justify his request for this extraordinary relief. On October 30, 2020, Defendant sent an email to the Warden asking to apply for compassionate release because he is a "chronic care inmate" with diabetes. BOP Counsel was unable to confirm with undersigned whether the Warden processed this as a compassionate release request or whether the Warden responded.

## II. DISCUSSION

By its terms, 18 U.S.C. § 3582(c)(1)(A) permits the Court to reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i). As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction. United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a non-binding policy statement addressing motions for reduction of sentences under § 3582(c)(1)(A).[1] As relevant here, the non-binding

---

[1] In a recent decision, the Fourth Circuit determined that the policy statement is no longer binding on courts deciding compassionate release motions because U.S.S.G. § 1B1.13 was enacted before the First Step Act. United States v. McCoy, 981 F.3d 271 (4th Cir. 2020). Specifically, the Fourth Circuit held that the policy statement found in U.S.S.G. § 1B1.13 does not apply to compassionate release motions brought by inmates under 18 U.S.C. § 3582(c)(1)(A)(i). Id. at 281–83. The McCoy Court reasoned that, because Section 1B1.13 applies only to motions brought by the Bureau of Prisons, it cannot be the policy statement applicable in circumstances where defendants bring their own motions for compassionate release. Id. In place of the no-longer-applicable policy statement, McCoy permits "courts [to] make their own independent determinations of what constitutes an 'extraordinary and compelling reason[ ]' under § 3582(c)(1)(A), as consistent with the statutory language[.]" Id. at 284. The

3

policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction"; (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

The policy statement includes an application note specifying the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is: (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C).

Finally, in addition to the non-binding policy statement, the Fourth Circuit has recently clarified that courts may make their own independent determinations as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section

---

McCoy Court noted, however, that Section 1B1.13 "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7. Because this Court finds that the policy statement is extremely helpful in assessing motions for compassionate release brought by defendants, the Court will rely on it as guidance.

3582(c)(1)(A).  United States v. McCoy, 981 F.3d 271 (4th Cir. 2020).

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, cannot alone provide a basis for a sentence reduction.  The conditions described in U.S.S.G. § 1B1.13 encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population.  As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."  United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under Section 3582(c)(1)(A).  If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons."  Under these circumstances, a chronic condition (i.e., one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19.  U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I).

Defendant has not established an extraordinary and compelling reason for compassionate release because he has not shown that he faces a "particularized susceptibility" to COVID-19. United States v. Adamson, 831 F. App'x 82, 83 (4th Cir. 2020) (per curiam). He asserts that his diabetes places him at risk of developing severe symptoms if he contracts the coronavirus. Because he has been fully vaccinated and has already contracted and recovered from COVID-19, he has not established that he is entitled to relief under § 3582(c)(1)(A).

5

Defendant asserts that he suffers from diabetes and hypertension.[2] According to the CDC, individuals with these conditions are more likely to suffer severe illness from COVID-19.[3] However, Defendant does not face a particularized susceptibility of contracting COVID-19 because he is fully vaccinated. Defendant received his first dose of the Pfizer-BioNTech vaccine on March 9, 2021 and his second dose on March 30, 2021. The CDC represents that vaccination will protect individuals from getting sick with COVID-19 and will prevent individuals from "getting seriously ill" even if they do contract the virus.[4] Specifically, according to the CDC, the Pfizer-BioNTech vaccine is 95% effective at preventing illness from COVID-19.[5]

The government previously had acknowledged that an unvaccinated inmate with a condition identified by the CDC as likely to increase the risk of severe illness from COVID-19 has asserted an extraordinary and compelling reason for release because he is "suffering from a serious physical or medical condition … that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 n.1(A)(ii). But because Defendant "has now been fully vaccinated, he simply does not show that he suffers from an extraordinary condition that is terminal or severely limits his ability to function in a correctional setting." United States v. Burks, No. 3:14-CR-208-MOC-1, 2021 WL 1394857, at *4 (W.D.N.C. Apr. 13, 2021); see United States v. Smith, No. 17-CR-20753, 2021 WL 364636, at *2 (E.D. Mich. Feb. 3, 2021),

---

[2] A review of Defendant's medical records confirms his diabetes diagnosis.
[3] People with Certain Medical Conditions, CDC (Mar. 29, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.
[4] "Key Things to Know About COVID-19 Vaccines," CDC (Apr. 13, 2021), https://www.cdc.gov/coronavirus/2019- ncov/vaccines/keythingstoknow.html.
[5] "Pfizer-BioNTech COVID-19 Vaccine Overview and Safety," CDC (Apr. 16, 2021), https://www.cdc.gov/coronavirus/2019- ncov/vaccines/different-vaccines/Pfizer-BioNTech.html.

*appeal docketed*, No. 21-1209 (6th Cir. Mar. 2, 2021) ("[A]bsent some shift in the scientific consensus, Defendant's vaccination against COVID-19 precludes the argument that his susceptibility to the disease is 'extraordinary and compelling' for purposes of § 3582(c)(1)(A).").

Because vaccination mitigates the risk of contracting COVID-19, Defendant cannot establish an "extraordinary and compelling" reason for compassionate release based on his concern about contracting the virus. See, e.g., United States v. Jones, No. 3:19-CR-105, 2021 WL 217157, at *5 (E.D. Va. Jan. 21, 2021) (concluding, where the defendant had received his first dose of the vaccine and would receive his second dose "soon," that he "he face[d] reduced risks from the virus, [] weighing against his request for compassionate release"); see also United States v. Baeza-Vargas, No. CR-10-448-10-PHX-JAT, 2021 WL 1250349, at *3 (D. Ariz. Apr. 5, 2021) (collecting cases); United States v. Williams, No. 5:01-CR-12-KDB, 2021 WL 966028, at *3 (W.D.N.C. Mar. 15, 2021) (finding that the defendant "will not face a particularized susceptibility to COVID-19 because he will soon be fully vaccinated").

In addition, the fact that Defendant previously contracted COVID-19 does not establish "that he suffers a particularized susceptibility to reinfection of the disease or harm therefrom." United States v. Nabaya, No. 3:17-CR-3, 2021 WL 54361, at *5 (E.D. Va. Jan. 6, 2021). Defendant tested positive on December 16, 2020, encountered no serious symptoms, and does not appear to have any lingering effects of the virus. Thus, "[t]he immediate threat serving as the basis for Defendant's requested release—the risk of Defendant contracting COVID-19 and becoming seriously ill—has passed." United States v. Hartley, No. 5:13-CR-46-KDB-DSC-1, 2020 WL 4926146, at *3 (W.D.N.C. Aug. 21, 2020). Further, courts have held that "[r]ecovery from a positive COVID-19 diagnosis, particularly where the inmate suffered only minor symptoms, is not enough to show that extraordinary and compelling circumstances warrant" his

release. Id. Indeed, the fact that Defendant appears to have recovered from the virus without any serious complications illustrates that BOP has successfully managed his treatment to date. See, e.g., United States v. Ferguson, No. 5:15-CR-18-KDB-DSC-1, 2020 WL 5300874, at *5 (W.D.N.C. Sept. 4, 2020) ("The fact that the medical staff at [the defendant's facility] were able to successfully treat [him] for COVID-19, despite his DVT [deep vein thrombosis] and blood disorder, serves as the best evidence that they are well-suited to treat him again even if it is possible that he could get re-infected."). Nor do the "lingering effects of COVID-19[] … rise to the level of an 'extraordinary and compelling' reason justifying compassionate release." United States v. Lumpkin, No. 2:12-CR-192, 2020 WL 7123109, at *2 (E.D. Va. Dec. 4, 2020). Finally, the possibility that Defendant may be re-infected with the virus does not constitute an extraordinary and compelling reason for compassionate release. Hartley, 2020 WL 4926146, at *4.

In short, Defendant has not established that "extraordinary and compelling reasons" support a sentence reduction.

Furthermore, the statutory sentencing factors weigh against release. Section 3582(c)(1)(A) requires a court to consider the factors set forth in 18 U.S.C. § 3553(a) before reducing a defendant's sentence. Those factors include "the nature and circumstances of the underlying offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), and "the need for the sentence imposed" "to reflect the seriousness of the offense, [] promote respect for the law, and [] provide just punishment for the offense," "to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant," id. § 3553(a)(2). Courts should also consider "the kinds of sentences available," id. § 3553(a)(3), and "the need to avoid unwarranted sentence disparities," id. § 3553(a)(6). Additionally, "the

Sentencing Commission has emphasized that a defendant's rehabilitation while incarcerated," by itself, is "insufficient to warrant a sentence reduction." United States v. Woolridge, No. 3:09-CR-156 (DJN), 2021 WL 415131, at *3 (E.D. Va. Feb. 5, 2021) (citing U.S.S.G. § 1B1.13 n.3); see 28 U.S.C. § 994(t) ("Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason" for a sentence reduction.). In this case, the relevant statutory sentencing factors do not support compassionate release. United States v. Reid, No. 2:02-CR-172-7, 2020 WL 7318266, at *3 (E.D. Va. Dec. 10, 2020) (finding that the statutory sentencing factors weighed against release where the defendant had "served as a 'manager' in a vast drug-trafficking conspiracy" and "continued his wrongful conduct even after his arrest by directing a co-conspirator to collect drug proceeds"); see also, e.g., United States v. Prater, No. 3:13-CR-133 (DJN), 2021 WL 54364, at *6 (E.D. Va. Jan. 6, 2021) (finding that a defendant convicted of drug and firearm-related offenses had "proved his willingness to deal drugs on a large scale and to use violence in furtherance of that drug-dealing activity"). Defendant's underlying conviction involved a firearm, and the relevant conduct involved possession and distribution of narcotics and the offer to sell additional firearms.

Defendant's criminal history underscores that the statutory sentencing factors do not support his request for release; at sentencing his criminal history category was a V. (See PSR at ¶ 71). Defendant presents a "serious" risk of recidivism given that he committed this offense after having served multiple prison sentences for possession with intent to sell/deliver cocaine, (see PSR at ¶ 65), sexual battery and second degree kidnapping, (see PSR at ¶ 66), resisting a public officer, (see PSR at ¶ 67), and misdemeanor larceny, (see PSR at ¶ 69). Prater, 2021 WL 54364, at *6; see also, e.g., United States v. Bryant, No. 4:19-CR-47-10 (DJN), 2020 WL 7497805, at *6 (E.D. Va. Dec. 21, 2020) (reasoning that the defendant "present[ed] a recidivism risk, as

evidenced by the fact that he violated the conditions of his pretrial release and consistently failed to comply with drug testing requirements"); United States v. Booth, No. 3:15-CR-56, 2020 WL 6361935, at *4 (E.D. Va. Oct. 29, 2020) (finding that the defendant "present[ed] a danger both to himself and the community" because he had several prior larceny convictions at the time he committed the underlying offense).

At sentencing, the Court imposed a sentence of 64-months, which was below the advisory guideline range of 70-87 months. As a result, reducing Defendant's sentence through compassionate release would be inconsistent with the § 3553(a) factors because it would fail to promote respect for the law. See, e.g., Bryant, 2020 WL 7497805, at *6 (finding that compassionate release "would not promote respect for the law" where the defendant "already received a sentence below the recommended advisory guideline range, and ha[d] over one year remaining on that sentence").

Compassionate release is also not appropriate because Defendant presents a danger to the safety of others and the community. See 18 U.S.C. § 3142(g). Defendant's underlying conduct involves firearms, including his sale, and offer to sell, multiple firearms to UCOs. See United States v. Harris, No. 3:11-CR-156, 2020 WL 7646633, at *5 (E.D. Va. Dec. 23, 2020); See also, e.g., United States v. Lloyd, No. 2:11-CR-36, 2020 WL 4501811, at *4 (E.D. Va. Aug. 5, 2020) ("Defendant was also attributed with a firearm at sentencing, a fact that further underscore[d] the seriousness of his criminal conduct.").

Defendant's "continued disregard for the law shows that he presents a danger to the community and should not be immediately released." Nabaya, 2021 WL 54361, at *6 (denying compassionate release where the defendant "claim[ed] sovereign citizenship and generally defie[d] Court orders and the rule of law"). Defendant's criminal history illustrates a pattern of

disrespect for the law, including at least one probation violation. "The need for continued deterrence of such misconduct weighs against" the defendant's request for compassionate release.  Nabaya, 2021 WL 54361, at *6.

In short, the § 3553(a) factors counsel against relief and Defendant is not entitled to compassionate release.

In sum, for all these reasons, the Court denies Defendant's motion.  This Court notes that, in light of United States v. McCoy, the Court has made its own independent determination as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A).  Having thus considered defendant's motion and reviewed the pleadings, the Court enters the following Order.

Finally, Defendant's motion to appoint counsel is denied, as he has no constitutional right to counsel in assisting him with filing a motion for reduction of sentence/compassionate release due to the COVID-19 pandemic.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Defendant's *pro se* Motion to Appoint Counsel and Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 41), is **DENIED**.

Signed: June 1, 2021

Max O. Cogburn Jr
United States District Judge